Good morning. May it please the Court. Mr. Johnson was subject to an illegal seizure in violation of his Fourth Amendment rights, and all evidence obtained as a result of this seizure must be suppressed. First, he argues the encounter rose to the level of an arrest requiring probable cause, which did not exist. Alternatively, if the stop was a simple Terry stop, reasonable suspicion of ongoing criminal activity did not exist. Turning first to the question of the level of the seizure, the encounter rose to the level of an arrest on the sidewalk. The question here and what courts must consider is whether there was a use of unreasonable force. The idea for these warrantless seizures is that law enforcement officers should use the least intrusive means to affect the seizure. Courts also consider the degree of humiliation that the conduct engenders. Analyzing all of the factors in this case, it was an arrest. The seizure was initiated by the officer driving his patrol car up onto someone's yard, blocking a sidewalk. The officer then immediately exited the patrol car with his weapon drawn, pointing at Mr. Johnson, yelling at him repeatedly and forcibly to get on the ground. Mr. Johnson turned and laid face down in a prone position with his body in an ax or starfish. While Mr. Johnson was on the ground, another officer arrived on the scene in a patrol car, immediately exited his patrol car and joined Officer Bittner. Mr. Johnson was handcuffed after the sergeant straddled Mr. Johnson. Taking all of these factors into consideration, this was an arrest. The error that occurred at the district court and that the prosecutor continues to argue on appeal is focusing simply on one factor. One factor being that the law enforcement officer had his weapon drawn. This circuit has repeatedly held when that's the only factor. When you have some indication that the individual is engaged in drug trafficking or otherwise armed and dangerous, that by itself does not necessarily elevate the encounter into an arrest. The issue is that's not the only factor present here. What's most troubling and strongest indicator that this was an arrest, that is how the officer initiated the seizure. This wasn't a traffic stop. This wasn't walking up to Mr. Johnson. He drove his car up onto someone's yard to initiate and get out of his car to seize Mr. Johnson. So it is distinguishable from those cases cited by the district court and cited by the prosecutor on appeal. Counsel, aren't there a couple of other factors we need to consider also related to officer safety and what the officers knew at the time? I believe they knew that he had been a passenger in a at the time of this incident. There is a, at this pressure hearing, there was kind of a vague one-off reference to, I think the incident was in 2017, that he was a suspect in a murder investigation. He had been shot in whatever that encounter was, but there was no further information and that they thought he was a shooter. They definitely thought he was involved. And I think if it was the only circumstance of, was it reasonable for these officers to just have their weapons drawn, having at least some indication that this person was involved in firearms in the past, be a much more difficult argument for Mr. Johnson. But it's not just the drawing of a firearm. It was unnecessary to drive up onto the yard and run at him with his weapon drawn. And I also think it's important to consider that when Mr. Johnson was down on the ground and he was in that prone position and he had his arms behind his back and his fingers interlaced behind each other, that Officer Bittner continued to have his weapon out pointed at Mr. Johnson during those circumstances. The cases cited by the parties indicate when we're talking about the level of seizure and we're talking about reasonableness, take into account, you know, is there still an ongoing danger present as this seizure is occurring? And in this case, Mr. Johnson had his backpack off down on the ground, not a risk to the officers at that point and still was using that level of force by law enforcement. And our initial position is that it was an arrest, but our argument is the same and that if it was an arrest or if it was a Terry stop, there was not sufficient grounds to justify the seizure. District Court relied on two offenses. Let me ask one other. Isn't this really, this is a motion to suppress, not an excessive force case? Right. But the question of force and the use of force does come into play with determining what level of seizure it was and what the government needs to provide to justify it. A lot of times there is some blur, but it definitely is distinguishable from most cases. But the District Court, and I want to address something that Your Honor mentioned about, well, he had been in a vehicle that had failed to stop when a traffic stop was initiated. And the District Court didn't, I mean, it was talked about in the District Court's analysis, but under Yabarra, when we're talking about reasonable suspicion or probable cause that that person is engaged in criminal activity, the driving off would be criminal activity of the driver. The fact that Mr. Johnson was there and present, similar to the Yabarra case, being near someone who's engaged in criminal activity is not enough to show that that actual individual, him or herself, is engaged in criminal activity. So, and that kind of gets to another point where the District Court and the prosecutor are arguing on appeal of, well, they'd want to talk to him. I imagine the law enforcement officers absolutely wanted to talk to him, but when we're talking about a warrantless seizure, it's only justified if there are grounds to that he might have some information or that he might have associated with somebody who had just committed a crime is not enough for a warrantless seizure. But turning to the two offenses that the District Court did rely upon, illegal drug trafficking and illegal possession of a firearm. Turning first to that probable cause or reasonable suspicion that Mr. Johnson was presently engaged in drug trafficking activity was insufficient. The information that was available to law enforcement at that time was vague and speculative. There was information from an incident a few months prior to the seizure where a confidential informant had stated that another man, Mr. Gibson, was to meet with his supplier and law enforcement was able to go and observe Mr. Gibson and saw him meet with Mr. Johnson. But there was no corroboration, there was no backing up that there was an actual drug transaction occurred. There was no hand-to-hand observed, there was no controlled substance observed, there was no stop of Mr. Gibson after this meeting between those two. And our position is that this is insufficient to establish probable cause or reasonable suspicion that at the time Mr. Johnson was seized, he was engaged in criminal activity. The remaining factors relied upon, again, are too vague and speculative to justify the seizure. The officers in Davenport had received information from other officers across state lines in Moline that they thought Mr. Johnson was engaged in drug trafficking activity. This isn't like the Williams case that the government cited. There was, like, similar to a warrant, there was information that someone was wanted for a specific offense. Here, the information they received from the officers in Moline is more akin to, like, a rumor or just a common thought. Well, we think he's a drug trafficker. There's no indication for the basis of that. There's no statement of, oh, we have a warrant for his arrest or we're hoping we have probable cause. It could have been something as simple as, well, he's popped up in a couple proffers as maybe being involved. That's not enough to establish probable cause or reasonable suspicion that at the time he was seized, he was engaged in drug trafficking activity. And then quickly address the firearm possession. Again, the issue with that is he's known to possess a firearm, but where's the crime? There's no evidence or testimony on why this firearm possession was illegal. There's a general discussion to his criminal history, but nothing indicating that he was a felon that was presented by the government before the district court at the suppression hearing. So if there are no immediate questions, I will reserve the remainder of my time for rebuttal. Thank you. Mr. Copley, we'll hear from you. Thank you, your honors. Good morning and may it please the court. A suspected shooter in a 2017 open homicide investigation, bringing a gun to a nightclub in September 2018, showing up at a rap concert in a car by himself, a black backpack in the back of that car with a gun inside of it. A suspected drug transaction observed by a trained and experienced drug detective in August of 2019. Information from a Moline drug detective, or excuse me, police detective, that the defendant is a known drug dealer who carries his guns and drugs in his backpack and oh, when he gets out of the fleeing car on the date in question, he has a black backpack. Certainly at a very fundamental and basic level, the information that was provided to law enforcement and specifically the Davenport Police Department as it relates to this investigation was credible in part by what actually happened when that backpack was searched. Large distribution quantities of drugs and a stolen and loaded handgun were in that black backpack. Counselor, I'd like to try to separate the wheat from the chaff here. What particularized objective basis was there for reasonable suspicion to make the Terry stop? It can't just be that he had a criminal past. Certainly, your honor, I believe there are two grounds. One, that he was in a vehicle that had just fled, so a crime had occurred, alluding from law enforcement. And I do not believe that it is simple that he was just sitting in the car based on what was found in that case. At the very least, there is potentially an allegation that he aided and abetted that alluding charge by telling that person, hey, I've got drugs and a gun in this car, you need to flee. Now, certainly, we don't know that because it's in the defendant, or excuse me, Mr. Johnson's head as to what actually happened. Ms. Quick says it's, you know, just the fact that your passenger in the car is not reasonable suspicion in itself. And I disagree with that because there are cases where this court has held that the exact opposite is true, where individuals have been running from a fleeing car or even walking away from a fleeing car. And in fact, Judge Graz, I believe in one of your more recent opinions in the Marzolf case, that's exactly what happened. There were children walking away from a fleeing car. One of the children was alleged to be armed with a gun, and officers held those kids at gunpoint for a significant amount of time, and that was deemed reasonable suspicion and not an issue. So I do not believe that just because he was a passenger in the car, and the case law doesn't appear to support that either, that that just means he gets off scot-free. But as it relates to the drug trafficking angle, yes, his name had been, I guess if you want to call it, off the radar for a few months. As this court is well aware, drug trafficking is a continuous crime. It is something that is ongoing. It is something that is typically not just a one-time, one-off thing, and that's not what the information was in this And in fact, Detective Rasche testified at the suppression hearing that the information that he was a drug dealer was still active information. It was not information that had disappeared or, to her knowledge, was stale. And certainly in the context, and I cited to this in my brief, in the context of search warrants and probable cause, which is a slightly higher standard than reasonable suspicion, there is search warrants with, you know, prior controlled buys or information that is months old that has later been deemed to be not stale. And certainly if we're taking a step back in terms of the burden of proof in reasonable suspicion, that same factor should apply. And certainly the government does not believe that that information was stale. Doesn't staleness, counsel, have to be tied to some particular facts, not just that we think he's a drug dealer? Perhaps a past transaction or an observation of an actual drug deal? And I would agree, Your Honor, but I do think we have that in this case. And certainly because Mr. Gibson was not arrested or certainly because the defendant, excuse me, Mr. Johnson was not arrested that day, a trained detective got information that a drug person was going to meet with their drug source. They immediately go and find that person, follow them and walk to a gas station. He gets into the car with Mr. Johnson. The car parks for a very short period of time. And then Mr. Gibson gets out of the car. Again, certainly to untrained individuals, that might just be like a small mix-up. But then you have him driving back to Illinois, going to his grandmother's house, and he gets out of a car carrying a backpack. And I think that is significant. The fact that he is carrying a backpack where he's had other incidents, including this one at issue, where there's either a gun in the backpack or drugs and a gun in the backpack. As it relates to the probable cause issue, certainly there's probable cause when Sergeant Stevens smells marijuana on Mr. Johnson. And I disagree with the factual assessment of Mr. Johnson in this case where he says that he was placed into handcuffs before there was any sort of probable cause developed. And that's not reflected in the transcript or in the body cam video in this case. Sergeant Stevens testified that immediately upon approaching Mr. Johnson and kind of getting into that over him position, he smelled the odor of raw marijuana coming from his person. He's a trained DRE or a drug recognition expert. He's been a detective, or excuse me, in a leadership role in a police officer for almost 20 years. Mr. Johnson had marijuana in his possession. That was before the handcuffs were placed on him. And so certainly the reasonable suspicion timeline here is roughly 30 seconds. When at the point that it doesn't appear that it's a yard or some, you know, little lady's yard that he's driving this car up onto and causing mayhem, in the squad video, he is far enough back from Mr. Johnson where it's not like he drives the car right up to his rear end or gets it right on top of him. And certainly the information that Officer Bittner had reflects the seriousness of the situation and Mr. Johnson. This is not just an individual who possesses guns and drugs in a felon who is known to be violent with officers and has prior incidents of aggravated fleeing with officers. And I think it's disingenuous that officers did not know he was a felon because in the hearing, I went through the criminal history pretty specifically with some of these violent offenses with Detective Rasche, an experienced detective. The PSR in this case, which of course includes a criminal history, shows multiple felony convictions. Simply because I did not ask or Detective Rasche did not say the magic words, he is a felon, does not mean that she did not know he was a felon. And so certainly I don't believe that that distinction or that argument follows considering that Detective Rasche was fully aware of the defendant, excuse me, Mr. Johnson's criminal history in this case. Where did she say that she was familiar with his criminal history? So I assume you have a basis for saying that they did. Yes. In the hearing, specifically as it related to the prior violent acts of Mr. Johnson, those were specifically brought up in the years of those convictions. That, for example, he had an aggravated fleeing conviction in the year that followed. He had a prior drug conviction. And of course, the drug specific question was not asked, are you aware that he's a felon? But it logically applies based on the extensiveness of his criminal history and the fact that, of course, the PSR reflects that felony criminal history. There's a difference between whether he was a felon and whether the officers knew that he was a felon. And if you didn't ask and make a record as to what they knew, then what's the basis to infer that they knew? Well, certainly, I would argue that Detective Rasche is someone who is an experienced drug detective, which, of course, in her training and experience, she's going to be dealing with people that often have criminal histories. If she has reviewed the criminal convictions of the defendant, which include multiple felony convictions, I think it is logical for an experienced drug detective to know in their felony without the specific question being, do you know he's a felon? And certainly... Did she testify that she had reviewed his criminal history? Yes. And I went through specific criminal convictions with her during the motion to suppress hearing of Mr. Johnson. But I'm asking, did she testify that before this incident, she had reviewed or was familiar with his criminal history? Yes, I believe so, Your Honor. Yes. Well, we'll look at... If you don't have a citation, we'll look at that. Thank you. At the end of the day, the touchstone, as my time is starting to wind down here, is reasonableness. And certainly, Officer Bittner, when he first responded to this location, knowing the collective information that all of these officers in this detective team knew, it was not unreasonable for him, as the only officer at that time, to get out with Mr. Johnson, to have his firearm out for a very brief period of time. This was not 20 minutes of having his gun pointed at him. And as soon as, and the video reflects this, as soon as Officer Stevens, Sergeant Stevens, had Mr. Johnson secured, the gun was put away. So at the end of the day, I strongly urge this court to affirm the ruling of the district court, because there was reasonable suspicion for the Terry stop, and there was probable cause for his eventual arrest. Unless there's other, any other questions, I will step down. Thank you. All right. Thank you for your argument. And during this session, as this is our last cleaning opportunity, your assistance. Ms. Quick, we'll hear from you and Roboto. Your Honor, first to address staleness issues. Many of the cases cited by the government deal with staleness when analyzing probable cause for a search warrant. And there's usually controlled buys at this home, and maybe it was a couple months before that. And there's a question of whether there's still probable cause or believe that evidence of a crime would be at the home. It's different from whether there's a question of whether someone is presently engaged in criminal activity from probable cause to arrest. And finally, I would note a lot of what the government's argument is, well, just trust it. Just trust. They say it's active, so it must be active. They say they thought he was a drug trafficker, so that's enough to show he was a drug trafficker. It's the government's burden to establish that this was a valid seizure. It's the government's burden to establish every element justifying the seizure of whatever offense that they believe has been committed. So our final position is that the Fourth Amendment requires more than just vague general assertions that the government has relied upon for every element of the offenses to justify the seizure. And we would ask this court to reverse the decision. All right. Thank you both, counsel, for your arguments. The case is submitted. The court will file a decision in due course.